Robinson, J.
The question here for determination is not whether the Director General of Railroads or the defendant company is primarily liable for the torts of the operators of the railroad during Federal control, but whether, under the state of the pleadings in this case, the judgment of the court of common pleas against the defendant company is valid, for it may be assumed at the outset that the public faith of the Federal government is pledged to compensate the owners of the various transportation systems of the nation upon a net basis fixed by proclamation and Federal statute, if not by express contract, and that any liability of the owner of such system incurred in the performance of its duty as an employe of the government, including recoveries for injuries to individuals occasioned in such employment, will be repaid by the government in the discharge of such pledged faith.
It may aid, however, in determining the purpose or lack of purpose of the parties to this suit in the making of certain allegations and admissions in pleadings, to briefly refer to the chronological sequence of the acts of Congress, the proclamation of the President, the happening of the accident out of which this litigation grew, the subsequent legislation of Congress, and the order of the Director General relative thereto.
By the act of August 29, 1916 (39 Stats, at Large, 645, c. 418, Section 1; Section 1974a, U. S. Comp. Stats.; Section 1648, par. 3, Barnes’ Fed. Code), Congress empowered the President in times of war to take possession and assume control of *73 any system or systems of transportation or any part thereof.
On the 26th day of December, 1917, pursuant to the above-mentioned authority, and pursuant to such authority as had been vested in him by the Constitution of the United States, the President by proclamation took possession and assumed control, from twelve o’clock noon on the 28th day of December, 1917, of each and every system of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States and consisting of railroads; appointed and designated William G. McAdoo as Director General of Railroads and authorized such Director to perform the duties imposed upon him, so long and to such extent as he should determine, through the Boards of Directors, Receivers, officers and employes of said systems of transportation; proclaimed that until such Director General should otherwise provide, “thé Boards of Directors, Receivers, officers and employes of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers in the names of their respective companies;” and proclaimed that “suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine.”
From the fact that the President by apt language proclaimed that the operation of the various systems should be continued by their boards of directors and officers in the usual and ordinary course *74 of business of common carriers in the names of their respective companies, and that “suits may be brought by and against said carriers and judgments rendered as hitherto,” it would seem if not apparent at least probable that it was the then intention of the President that all liabilities of the United States incurred by. the operation of Federal control should be litigated and determined in the names of the respective owners of such systems; and such erroneous, as it now develops, interpretation, was, if not universally, at least rather generally, accepted.
On the 9th day of January, 1918, occurred the accident out of which this litigation arose, and on the 15th day of March, 1918, a petition was filed against the defendant company.
By act of March 21, 1918 (40 Stats, at Large, 456, c. 25, Section 10; Section 3115fj, U. S. Comp. Stats.; Section 10163, Barnes’ Fed. Code), Congress, evidently having in mind the plan adopted by the President of preserving the identity of the respective systems, and for the purpose of final accounting having in mind the necessity of main-, taining the separate entity of each, provided that “carriers while under Federal control shall be subject to all laws and liabilities as common carriers * * *. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal government,” thus recognizing, as it *75 would seem, not that the term carrier necessarily meant the owner of the company, but rather that the owner of the company was an instrumentality of the Federal government and that for the sake of convenience the government in respect to its liability as a common carrier should be sued and its liability determined in the name of such instrumentality.
On the 28th day of October, 1918, the Director General issued General Order No. 50, in which he directed that:
“Actions at law, * * * claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or. system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise * * *.
“The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom.”
Thus the various theories of agency, joint possession, subordinate possession, physical possession, etc., were upset.
*76 It will be observed that this order was issued a number of months subsequent to the filing of the petition in the instant case.
On the 29th day of November, 1918, subsequent to the promulgation of General Order No. 50, defendant filed its answer herein, in which answer it admitted that it was, at the time the injury to the plaintiff was alleged by him to have been received, “a corporation duly organized and existing under and by virtue of the laws of the State of Ohio, owning and operating a line of railway extending from the City of Columbus, Ohio, to the City of Toledo, Ohio, and extending through a station known as Dunbridge, Ohioand “that on or about the 9th day of January, 1918, at about 11:25 A. M., the plaintiff was walking across the tracks of defendant going towards the platform and depot of defendantand that “as plaintiff was crossing said main track, he was struck by a south-bound train of defendant and injured.”
On the same day a motion was filed by defendant for an order dismissing defendant and substituting Wm. G. McAdoo, Director General of Railroads, in compliance with General Order No. 50, which motion was never considered nor ruled upon by the court.
The fact that at the same time and in the same cause the defendant company adopted two inconsistent positions, the one based upon the theory of defendant’s actual possession and operation, whatever process of reasoning may have been pursued in arriving at that conclusion, and the other upon *77 the theory that defendant had been ousted from all possession and control, and that the liability, if any, was that of the United States and should be determined in the name of the Director General of Railroads, clearly indicates, that, notwithstanding that in addition to such knowledge as the general public in theory had from congressional enactment, executive proclamation and general order with reference to the nature and extent of the possession and control of the government over its system of transportation, and of which the court could take judicial notice, defendant had the private information and data incident thereto for more than ten months of actual operation under such Federal control, and from those facts was unable to determine its legal status with reference to its liability to persons injured in the operation of such system. It would therefore hardly seem that the court in possession only of the information constructively known to the general public, through United States statute, executive proclamation and general order, would be in a position to determine such status as a matter of law without proof of the facts which might or might not take it out of the operation of such statute, proclamation and general order.
And touching upon the effect of these various statutes, proclamations and orders, it may be observed, that, while, because of the national exigency, it is the policy of -the courts in times of national peril, such as the nation was facing when these events occurred, to so liberally construe the special powers vested in the chief executive as to sustain and effectuate the purpose thereof, and to *78 that end also more liberally to construe the constitutional division and classification of the powers of the coordinate branches of the government, and in so far as may not be clearly inconsistent with the constitution to vest extraordinary powers in the chief executive, yet even Congress was without power to limit or extend the liability of the citizens of the respective states to one another, corporations included, in contravention of state law, and of course could not delegate such a power to the Executive. Such liability or non-liability of the defendant company in the instant case was not dependent upon the enactment of Congress and the proclamation of the President that it should be liable, if it was the intention of either to so declare, nor upon the declaration of the Director Géneral that it should not be liable, but rather upon whether it was actually operating the train in question at the time the injury occurred and whether the facts of which the court was obliged to take judicial notice precluded the possibility of the defendant company so operating such train.
It will be observed that by Section 14 of the Act of March 21, 1918 (40 Stats, at Large, 458, c. 25; Section 31l5|-n, U. S. Comp. Stats.; Section 10167, Barnes’ Fed. Code), Congress provided “That the President may, prior to July first, one thousand nine hundred eighteen, relinquish control of all or any part of any railroad or system of transportation * * * and the President may, at any time during the period of Federal control agree with the owners thereof to relinquish all or any part of any railroad or system of transportation.”
*79 By this provision the President was empowered to release the system of transportation of the defendant company, or any portion of such system, without releasing any other system, or any portion of any other system, and to release ■ the same by agreement with the owner thereof. Such a release being authorized to be accomplished by agreement with the owner need not be accomplished by a general order, and if not accomplished by a general order a court would not and could not take judicial notice thereof, any more than a court- would or could take judicial notice of the existence and terms of a contract of a private individual or company •to perform for a consideration certain services for the general government or some subdivision thereof. If then the court could not take judicial notice of the existence and the terms of such an agreement between the Director General of Railroads and the defendant Company, to release that portion of its road operating through the village of Dun-bridge, Ohio, from Federal control, if such an agreement had existed, it would not and could not take judicial notice of the fact that no such an agreement had been entered into.
The plaintiff in the instant case having averred that the defendant company was operating the train in question at the time in question, it became an issuable fact, which the defendant company was at liberty to controvert or admit, irrespective of the nature and extent of Federal control under and by virtue of the acts of Congress, the proclamation of the President and the orders of the Director General. It, in possession of all the facts *80 of which the court was obliged to take judicial notice, and in addition in possession of such facts as of necessity had come to its notice by reason of its actual operation for many months under the direction of the Director General, elected to admit that it was operating the train in question as averred in plaintiff’s petition. Having so admitted, plaintiff was precluded from offering evidence upon the subject, and while such admission stood defendant was likewise precluded from offering evidence upon the same subject. The evidence upon that subject of the various operators of the train, offered by the defendant company and admitted by the court over' the objection of the plaintiff, was incompetent by reason of the admissions of the answer, and should not have been considered by the reviewing court in determining that question.
The trial court committed no error in overruling the motion of the defendant company, at the close of all the evidence, to direct a verdict for the reason that the train and railroad were at the time being operated by the United States.
For the reasons above indicated, the judgment of the court of appeals will be reversed and the cause remanded to that court with instructions to' consider and pass upon the other assignments of error.

Judgment reversed, and cause remanded.

Marshall, C. J., Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.